758 So.2d 492 (2000)
Sherman DEES a/k/a Sherman F. Dees a/k/a Sherman F. Deas, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00656-COA.
Court of Appeals of Mississippi.
May 9, 2000.
*493 George S. Shaddock, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This is an appeal by Sherman F. Dees from his conviction for possession of a firearm as a convicted felon. Dees's guilt was adjudicated by the trial court in a bench trial conducted in Jackson County. Dees raises three issues on appeal. The first two involve the admissibility of evidence sought to be excluded by Dees as having been obtained by methods that violated Dees's constitutional rights against unreasonable search and seizure and self-incrimination as guaranteed him by the United States Constitution. The third issue is a claim that the verdict of guilty was against the weight of the evidence, but the *494 strength of that argument in reality depends on the evidence admissibility questions raised as the first two issues. We conclude that the trial court did not err in admitting the evidence that Dees complains of, and we further find that, when the probative value of that is considered, the verdict was not against the weight of the evidence. Therefore, we affirm the conviction.

I.

Facts
¶ 2. Police officers, armed with a search warrant for Dees's residence, proceeded to that location to conduct a search for illegal narcotics. As the officers neared the residence, officers in one vehicle spotted Dees driving away in his own vehicle. These officers proceeded to stop Dees. They informed him that a search of his residence was imminent and required him to return to the residence with them. To facilitate his return, one officer accompanied Dees in his vehicle while the other officer drove the police vehicle. Prior to entering Dees's vehicle, the officers inquired if there was anything in the vehicle they needed to be aware of and Dees informed them that there was a firearm in the glove box.
¶ 3. By the time Dees and the officers reached the residence, the other officers had already announced their presence and forcibly entered the dwelling when they received no reply. Dees was required to enter the residence and sit on the couch while the search was conducted. Testimony offered at trial indicated that Dees, three other adults, and two children all occupied the residence as their primary dwelling. The evidence indicated that the adults were roommates who merely shared living expenses and that each of them had separate areas of the home to use as sleeping quarters.
¶ 4. During the course of the search, a small quantity of marijuana was discovered together with a rifle and a handgun. After the drugs and firearms were discovered, Dees was given his Miranda rights warning by one of the officers and he thereafter admitted ownership of the two firearms found in the dwelling.
¶ 5. Later, when a National Crime Information Center computer check disclosed that Dees was a convicted felon, he was indicted for possession of a firearm as a convicted felon, a violation of Section 97-37-5 of the Mississippi Code. Miss.Code Ann. § 97-37-5 (Rev.1994). Both the firearms found in the residence and the handgun seized from the glove box of his automobile were mentioned in the indictment. Dees sought to exclude his statement admitting ownership of the weapons, claiming that it was obtained in a manner that violated his right against self-incrimination. He also sought to exclude evidence of the handgun found in his vehicle's glove box by claiming that it was found in an illegal search since the warrant covered only his domicile. He points out that the vehicle, at the time the search commenced, was not on the premises and thus could not be a legitimate subject of search under the warrant.

II.

The First Issue: Suppression of Dees's Statement
¶ 6. Dees moved to suppress his statement admitting ownership of the two firearms discovered in the dwelling. Suppression of the statement was critical to Dees's defense, in his view, since the fact that the searched dwelling had multiple adult permanent residents made it difficult for the State to prove a constructive possession case depending solely on the fact that the weapons were discovered on the premises. See Jones v. State, 693 So.2d 375, 376-77 (Miss.1997).
¶ 7. Once a motion to suppress by the defense is made, the State has the burden of proving the voluntariness of the statement. Gavin v. State, 473 So.2d 952, 954 (Miss.1985). Because there is little dispute that Dees was, at the time of the *495 statement, being involuntarily detained by law enforcement officers, one of the key prerequisites for determining the voluntariness of the statement is to show that Dees knowingly waived his right against self-incrimination. Id. The fundamental question upon which that inquiry must begin is whether law enforcement officers, prior to eliciting an incriminating statement in a custodial setting, have fully advised the suspect of those constitutional protections now commonly known as his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966); Tolbert v. State, 511 So.2d 1368, 1374 (Miss.1987). In this case, one of the officers testified that she gave Dees his Miranda rights and obtained from him an admission that he understood those rights before he made the incriminating admissions of ownership of the firearms. On cross-examination, it was brought out that the Miranda warning procedure did not include delivering to Dees a written listing of those rights nor did the officers obtain a written statement from Dees of his understanding and knowing waiver of those rightsall of which is a customary, but not mandatory, means of demonstrating the voluntariness of the suspect's waiver of rights. See Davis v. State, 320 So.2d 789, 790 (Miss.1975). Dees did not testify in support of his suppression motion nor did the defense present any other witnesses tending to contradict the officer's testimony that Dees was informed of, understood, and waived his right against self-incrimination. Since oral Miranda warnings and waivers are effective if proven to the satisfaction of the trier of fact, there is no basis to find error in the trial court's decision to admit evidence of Dees's inculpatory statements regarding ownership of the firearms.

III.

The Second Issue: Evidence of the Firearm Retrieved from the Vehicle
¶ 8. Dees argues that the firearm retrieved from his vehicle should have been suppressed as being obtained in a search that exceeded the bounds of the warrant since the vehicle was not on the premises described in the search warrant at the time the warrant was served. The State counters with the argument that the gun was discovered and seized based on the State's reasonable efforts to secure the safety of its officers while carrying out the search warrant and not under the warrant itself. Viewed in the light most favorable to the State, Dees was asked, prior to an officer riding in the vehicle with him to the residence where the search was about to commence, whether there were any weapons in the vehicle. He, at that point, responded that there was a hand gun in the glove box, and the firearm was secured by the officers, not as evidence of criminal conduct, but to protect the safety of the officers during the search.
¶ 9. There is no indication that the officer initiating that inquiry had any knowledge at the time that Dees had a prior felony conviction. It is a fundamental concept of police work that officers, in the course of conducting an investigation that involves close contact with persons suspected of criminal activity, are entitled to take reasonable precautions to ensure their safety. See, e.g., Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Viewing the evidence in the light most favorable to the State, it is possible to draw a reasonable conclusion that the officer made an inquiry as to the existence of weapons, not intending to extract an admission of criminal activity, but simply to protect the officers involved in enforcing the search warrant. There can be no doubt that the officers have the right to detain a suspect temporarily, even without an arrest warrant, while carrying out a search of the detainee's residence pursuant to a search warrant. Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In Summers, the Supreme Court noted that one of the justifications for temporarily detaining the suspect was "the interest in minimizing the risk of harm to the officers." Id. at 702, 101 S.Ct. 2587. As a part of that temporary detention, the officers must be entitled *496 to take reasonable precautions to ensure that the detained individual will not be able to offer sudden violent resistance to those conducting the search. As the Supreme Court specifically noted in Michigan v. Summers, especially when narcotics are involved, the search "is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." Id. That right to take reasonable precautions for the safety of the investigating officers could certainly be seen as extending to ensuring that there are no weapons within easy reach of the temporarily-detained suspect by conducting a Terry search of the suspect's person and a further search into those areas within his immediate control. In this case, that would necessarily include the glove box of the vehicle driven by the suspect. We do not find it of any particular moment that the weapon was discovered through the suspect's own response to an inquiry about weapons rather than a physical search, which could have been undertaken in all events, even over the objection of the suspect.
¶ 10. Therefore, we conclude that the weapon in the vehicle was discovered as a result of constitutionally-permissible efforts by the investigating officers to protect their physical safety while temporarily detaining Dees during the course of carrying out a search of his residence. Seen in that light, the discovery of the firearm in Dees's vehicle's glove box was not the fruit of an unreasonable search that violated any protections afforded to Dees under the Fourth Amendment. U.S. CONST. amend. IV. It was not error, therefore, to admit the firearm into evidence.

IV.

The Third Issue: The Weight of the Evidence.
¶ 11. Dees argues that his conviction was against the weight of the evidence. Had either the hand gun found in Dees's vehicle or Dees's incriminating admission of ownership of the guns found in the residence been suppressed, there might be some merit his argument. However, the State made a prima facie case of constructive possession of the hand gun by proving that it was found in a vehicle under the exclusive control of Dees. Wall v. State, 718 So.2d 1107(¶ 13) (Miss.1998). Additionally, Dees incriminated himself by claiming ownership of the firearms discovered in the residence. Certainly, in his defense, he presented testimony from other residents of the house claiming that the firearms belonged to them. However, this merely created a disputed issue of fact to be resolved by the jury. Cobb v. State, 734 So.2d 182(¶ 13) (Miss.Ct.App.1999). The testimony of the defense witnesses was not, in our view, so overwhelmingly credible as to outweigh those damaging admissions made by Dees himself. The jury chose to disbelieve those competing claims of ownership and there is nothing in this record that would suggest the trial court was obligated to intervene in the matter and order a new trial in order to avoid a substantial miscarriage of justice. See Little v. State, 744 So.2d 339(¶ 11) (Miss. Ct.App.1999). For the same reason, there is no basis for this Court to set aside the trial court's determination.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCE OF SIX MONTHS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A TWO HUNDRED FIFTY DOLLAR FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.